1  MARK F. HAZELWOOD, # 136521
   DIRK D. LARSEN, # 246028
2  LOW, BALL & LYNCH
   505 Montgomery Street, 7th Floor
3  San Francisco, California  94111-2584
   Telephone: (415) 981-6630
4  Facsimile: (415) 982-1634
   Email: mhazelwood@lowball.com
5         dlarsen@lowball.com

6  Attorneys for Defendants
   SILICON VALLEY ANIMAL CONTROL
7  AUTHORITY, AL DAVIS, ANTJE MORRIS
   AND CITY OF CAMPBELL

8

9                 UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE

11

12  LEE JACKSON and KENNETH JACKSON,      )  Case No. C07 05667 RS
                                          )
13              Plaintiffs,               )  DEFENDANTS SILICON
                                          )  VALLEY ANIMAL CONTROL
14       v.                               )  AUTHORITY, AL DAVIS, ANTJE
                                          )  MORRIS AND CITY OF
15  SILICON VALLEY ANIMAL CONTROL         )  CAMPBELL'S NOTICE OF
    AUTHORITY, CITY OF SANTA CLARA, CITY  )  MOTION AND MOTION FOR
16  OF CAMPBELL, HUMANE SOCIETY SILICON   )  SUMMARY JUDGMENT, OR IN
    VALLEY DOES 1 TO 20,                  )  THE ALTERNATIVE, PARTIAL
17                                        )  SUMMARY JUDGMENT;
                Defendants.               )  MEMORANDUM OF POINTS
18  _____  )  AND AUTHORITIES (F.R.C.P 56)

19                                           Date:       September 3, 2008
                                             Time:       9:30 a.m.
20                                           Courtroom:  4, 5th Floor
                                             Judge:      Hon. Richard
21                                                       Seeborg

22       TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

23       NOTICE IS HEREBY GIVEN that on September 3, 2008, at 9:30 a.m., in Courtroom 4 of the

24  above-entitled Court, located at 280 South 1st Street, San Jose, California, defendants SILICON

25  VALLEY ANIMAL CONTROL AUTHORITY ("SVACA"), AL DAVIS, ANTJE MORRIS and CITY

26  OF CAMPBELL will, and hereby do, move the Court for an order granting summary judgment in their

27  favor on the grounds that there is no genuine issue of material fact as to all of plaintiffs KENNETH

28  JACKSON and LEE JACKSON's ("Plaintiffs") claims against them, and defendants are entitled to

                                        -i-

1  judgment as a matter of law.  In the alternative, defendants move for an order granting partial summary

2  judgment on the grounds that any one or more of Plaintiffs' claims for relief or prayer for the recovery of

3  punitive damages against them have no merit as a matter of law and should therefore be dismissed.

4      This motion is based on this notice, on the Memorandum of Points and Authorities below, on the

5  Declaration of Dirk D. Larsen filed herewith and the exhibits attached thereto, on the Declaration of

6  Daniel Soszynski filed herewith and the exhibits attached thereto, on the Declaration of Antje Morris

7  filed herewith and the exhibits attached thereto, on the Declaration of Albert Davis filed herewith and

8  the exhibits attached thereto, on the Declaration of Russell Patterson filed herewith and the exhibits

9  attached thereto, on the Court's file in this matter, and on any oral and/or documentary evidence that

10  may be presented at the hearing of this motion.

11                    **STATEMENT OF RELIEF SOUGHT**

12      Defendants hereby move the Court for an order granting summary judgment in their favor, and

13  against Plaintiffs, on the grounds that there is no genuine issue of material fact as to all of Plaintiffs'

14  claims for relief against them, and they are thus entitled to judgment as a matter of law.  These claims

15  are: (1) first claim for violation of the Fourth Amendment to the U.S. Constitution and Art. I, § 13 of the

16  California Constitution (against SVACA, Davis and Morris); (2) second claim for denial of procedural

17  due process (against the City of Campbell); (3) third claim for negligent hiring, training and supervision

18  (against SVACA); (4) fourth claim for negligent infliction of emotional distress (against SVACA, Davis

19  and Morris); (5) fifth claim for assault and battery (against SVACA, Davis and Morris); (6) sixth claim

20  for intentional infliction of emotional distress (against SVACA, Davis and Morris); (7) seventh claim for

21  conversion (against SVACA, Davis and Morris); (8) eighth claim for violation of federal civil rights,

22  brought pursuant to 42 U.S.C. § 1983 (against SVACA, Davis and Morris).  In addition, defendants

23  Davis and Morris move the court for an order dismissing Plaintiffs' prayer for punitive damages on the

24  grounds that Plaintiffs have produced no evidence of evil intent, malice, fraud or oppression that would

25  support such relief.

26      In the alternative, defendants move for an order granting partial summary judgment on the

27  grounds that any one or more of Plaintiffs' claims for relief or prayers for recovery against them have no

28  merit as a matter of law and should therefore be dismissed.

# MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

Page(s)

I.    STATEMENT OF ISSUES TO BE DECIDED .......................................... 1

II.   STATEMENT OF RELEVANT FACTS ............................................. 1

    A.    Parties to the Motion ................................................. 1

    B.    Incident ......................................................... 2

    C.    Pleading Allegations ................................................. 5

III.  ARGUMENT ................................................................ 6

    A.    Standard of Review .................................................. 6

    B.    Plaintiffs' State-Law Claims Have No Merit as a Matter of Law ................. 7

        1.    The Seizure of the Animals Was Lawful as Authorized
            by California Penal Code § 597.1 .................................... 7

        2.    Because Art. I § 13 of the California Constitution Does
            Not Provide a Private Right of Action, Plaintiffs' Claims
            under That Provision Have No Merit as a Matter of Law ................... 9

        3.    Because Officer Davis Applied Only Reasonable Force to
            Ms. Jackson, He and SVACA Cannot Be Held Liable for
            Assault and Battery ............................................. 10

        4.    Because Plaintiffs Have Not Shown that SVACA Knew
            of Its Employees Alleged Unfitness, They Cannot Sustain
            Their Third Cause of Action for Negligent Hiring, Training
            and Supervision ............................................... 11

        5.    Because Plaintiffs Abandoned Their Interest in the Animals,
            Their Seventh Cause of Action for Conversion Has No
            Merit as a Matter of Law ......................................... 11

        6.    Because the Officers' Conduct During the Seizure Was Lawful
            and Proper, Plaintiffs Cannot Sustain Claims for Negligent
            and Intentional Infliction of Emotional Distress ...................... 12

        7.    SVACA and Its Officers Are Entitled to Discretionary
            Immunity Pursuant to California Government Code
            §§ 820.2 and 815.2(b) .......................................... 13

-iii-

DEFENDANTS SVACA, AL DAVIS, ANTJE MORRIS AND CITY OF CAMPBELL'S NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P 56)
J:\1042\sf0016\Pld\MSJ-mot.mpa.wpd                                                                C07 05667 RS

Page(s)

8.  SVACA and Its Officers Are Entitled to Investigation
    Immunity Pursuant to California Government Code
    §§ 821.6 and 815.2(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

C.  Plaintiff's Federal Cause of Action Against SVACA,
    Officer Davis and Officer Morris Has No Merit as
    a Matter of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    1.  The "Automobile Exception" to the Warrant
        Requirement Justifies Officer Morris's Search
        of Plaintiffs' Motor Home . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    2.  Because Officer Davis's Use of Force Was
        Objectively Reasonable, It Did Not Constitute
        a Violation of Ms. Jackson's Fourth
        Amendment Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    3.  Officers Davis and Morris are Entitled to
        Qualified Immunity from Suit and Liability . . . . . . . . . . . . . . . . . . . . . 19

        a.  Officer Morris Is Entitled to Qualified
            Immunity Because Probable Cause and
            Exigent Circumstances Justified the
            Warrantless Entry . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        b.  Officer Davis Is Entitled to Qualified
            Immunity Because Did He Not Use Force
            That Was Unnecessarily Painful,
            Protracted, or Degrading . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    4.  Plaintiffs Cannot Support Their § 1983 Claim
        Against SVACA Under the *Monell* Doctrine . . . . . . . . . . . . . . . . . . . . . 21

D.  Plaintiffs' Second Cause of Action, Against the City of
    Campbell, for Violation of Procedural Due Process Has
    No Merit as a Matter of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    1.  The City of Campbell Did Not Conduct the
        Post-Seizure Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    2.  The Conduct of the Post-Seizure Hearing Did Not
        Constitute a Violation of Plaintiffs' Due Process
        Rights as a Matter of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

E.  Plaintiffs Are Not Entitled to Recover Punitive Damages
    from Officers Davis and Morris as a Matter of Law . . . . . . . . . . . . . . . . . . . 24

IV.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

## CASES

U.S. Supreme Court Cases                                                                 Page(s)

Anderson v. Creighton
    483 U.S. 635 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

California v. Carney
    471 U.S. 386 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17

Carroll v. United States
    267 U.S. 132 (1925) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Celotex Corp. v. Catrett
    477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

City of Los Angeles v. Heller
    475 U.S. 796 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Graham v. Connor
    490 U.S. 386 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-19

Harlow v. Fitzgerald
    457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Mathews v. Eldridge
    424 U.S. 319 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

Monell v. Dept. of Social Services
    436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 21

Saucier v. Katz
    533 U.S. 194 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Smith v. Wade
    461 U.S. 30 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

South Dakota v. Opperman
    428 U.S. 364 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Terry v. Ohio
    392 U.S. 1 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

U.S. Circuit Court of Appeals Cases

Act Up!/Portland v. Bagley
    988 F.2d 868 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Daugherty v. Costello
    24 Fed.Appx. 684 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Page(s)

Drummond v. City of Anaheim
    343 F.3d 1052 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Federman v. County of Kern
    61 Fed.Appx. 438 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Franklin v. Foxworth
    31 F. 3d 873 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Goichman v. Rheuban Motors Inc.
    682 F.2d 1320 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-23

Hopkins v. Andaya
    958 F.2d 881 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Houghton v. South
    965 F.2d 1532 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

LaLonde v. County of Riverside
    204 F.3d 947 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 20

Meehan v. County of Los Angeles
    856 F.2d 102 (9th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.
    210 F.3d 1099 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Palmer v. Sanderson
    9 F.3d 1433 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Scott v. Henrich
    39 F.3d 912 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Tatum v. City and County of San Francisco
    441 F.3d 1090 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Trevino v. Gates
    99 F.3d 911 (9th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

U.S. v. Alaimalo
    313 F.3d 1188 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

U.S. v. Albers
    136 F.3d 670 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Ward v. San Jose
    967 F.2d 280 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

U.S. District Court Cases

Price v. County of San Diego
    990 F.Supp.1230 (S.D. Cal. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

1                                                                                                    Page(s)

2  Bates v. Arata
        2008 WL820578 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 22
3

4  State Cases

5  Ann M. v. Pacific Plaza Shopping Center
        6 Cal.4th 666, 25 Cal.Rptr.2d 137 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
6
   Basich v. Allstate Ins. Co.
7       87 Cal.App.4th 1112, 105 Cal.Rptr.2d 153 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

8  Baughman v. State of California
        38 Cal.App.4th 182, 45 Cal.Rptr. 2d 82 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
9
   Broden v. Marin Humane Society
10      70 Cal.App.4th 1212, 83 Cal.Rptr.2d 235 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

11 Cochran v. Herzog
        155 Cal.App.3d 405, 205 Cal.Rptr. 1 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
12
   Edison v. City of Anaheim
13      63 Cal.App.4th 1269, 74 Cal.Rptr.2d 614 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

14 Federico v. Superior Court (Jenry G.)
        59 Cal.App.4th 1207, 69 Cal.Rptr.2d 370 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
15
   Fremont Indem. Co. v. Fremont General Corp.
16      148 Cal.App.4th 97, 55 Cal.Rptr. 621 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

17 Hernandez v. General Adjustment Bureau
        199 Cal.App.3d 999, 245 Cal.Rptr. 288 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
18
   Jenkins v. County of Orange
19      212 Cal.App.3d 278, 260 Cal.Rptr. 645 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

20 Kemmerer v. County of Fresno
        200 Cal.App.3d 1426, 246 Cal.Rptr. 609 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
21
   Long v. PKS, Inc.
22      12 Cal.App.4th 1293, 16 Cal.Rptr.2d 103 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

23 Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc
        48 Cal.3d 583, 257 Cal.Rptr. 98 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
24
   Martinez v. County of Los Angeles
25      47 Cal.App.4th 334, 54 Cal.Rptr.2d 772 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

26 Noble v. Sears, Roebuck & Co.
        33 Cal.App.3d 654, 109 Cal.Rptr. 269 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
27

28

Page(s)

People v. Medina
    7 Cal.3d 30, 101 Cal.Rptr. 521 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Posey v. State of California
    180 Cal.App.3d 836, 225 Cal.Rptr. 830 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Roman Catholic Bishop v. Superior Court
    42 Cal.App.4th 1556, 50 Cal.Rptr.2d 399 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Scott v. Pacific Gas & Electric Co.
    11 Cal.4th 454, 46 Cal.Rptr.2d 427 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Tollefson v. Roman Catholic Bishop
    219 Cal.App.3d 843, 268 Cal.Rptr. 550 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Tomaselli v. Transamerica Ins. Co.
    25 Cal.App.4th 1269, 31 Cal.Rptr.2d 433 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**FEDERAL STATUTES**

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 15, 21, 24

F.R.C.P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

F.R.C.P. 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 22

**STATE STATUTES**

California Civil Code

    § 3294 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

California Government Code

    § 810 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    § 815 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    § 815.2(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14

    § 815.2(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13-15

    § 820(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    § 820.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

    § 821.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

Page(s)

California Penal Code

    § 241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

    § 242 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

    § 597.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

    § 597.1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13-14

    § 597.1(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    § 597.1(f)(1)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

    § 597.1(f)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 22-23

    § 597.1(f)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

    § 597.1(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

    § 835a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

California Vehicle Code

    § 22651 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Santa Clara Municipal Code

    § 6.30.020 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15-16

    § 6.30.020(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**CONSTITUTIONAL PROVISIONS**

U.S. Const., Amend. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

U.S. Const., Amend. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 15

California Const., Art. I § 13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9-10

**OTHER AUTHORITIES**

Restatement Second of Agency, § 213. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

I.    **STATEMENT OF ISSUES TO BE DECIDED**

This motion presents the following issues for decision: (1) whether SVACA, Davis and Morris are entitled to judgment as a matter of law as to Plaintiffs' first claim for violation of the Fourth Amendment to the U.S. Constitution and Art. I, § 13 of the California Constitution; (2) whether the City of Campbell is entitled to judgment as a matter of law as to Plaintiffs' second claim for violation of procedural due process; (3) whether SVACA is entitled to judgment as a matter of law as to Plaintiffs' third claim for negligent hiring, training and supervision; (4) whether SVACA, Davis and Morris are entitled to judgment as a matter of law as to Plaintiffs' fourth claim for negligent infliction of emotional distress; (5) whether SVACA, Davis and Morris are entitled to judgment as a matter of law as to Plaintiffs' fifth claim for assault and battery; (6) whether SVACA, Davis and Morris are entitled to judgment as a matter of law as to Plaintiffs' sixth claim for intentional infliction of emotional distress; (7) whether SVACA, Davis and Morris are entitled to judgment as a matter of law as to Plaintiffs' seventh claim for conversion; (8) whether SVACA, Davis and Morris are entitled to judgment as a matter of law as to Plaintiffs' eighth claim for violation of federal civil rights; and (9) whether Plaintiffs may recover punitive damages from Davis and Morris as a matter of law.

II.    **STATEMENT OF RELEVANT FACTS**

A.    **Parties to the Motion**.

SVACA is a Joint Powers Authority—i.e., a public entity—created pursuant to Articles 1 through 4 of Chapter 4 of Division 7 of the California Government Code (commencing with § 6500). (Declaration of Daniel Soszynski filed herewith ["Soszynski Dec."], ¶ 3; Exhibit A to Soszynski Dec.) Albert Davis and Antje Morris are animal-control officers employed by SVACA. (Declaration of Albert Davis filed herewith ["Davis Dec."], ¶ 2; Declaration of Antje Morris filed herewith ["Morris Dec."], ¶ 2.) The City of Campbell is a municipal entity organized and existing under the laws of the State of California. At the time of the incident in question, Russ Patterson was employed as a Captain in the Campbell Police Department. (Declaration of Russell Patterson filed herewith ["Patterson Dec."], ¶ 2.) However, Captain Patterson was not involved in the incident in that capacity; instead, he served as the SVACA Hearing Officer for the hearing conducted after the seizure that is the subject of Plaintiff's claims. (Patterson Dec., ¶ 3.)

-1-

DEFENDANTS SVACA, AL DAVIS, ANTJE MORRIS AND CITY OF CAMPBELL'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P 56)
J:\1042\sf0016\Pld\MSJ-mot.mpa.wpd                                                                                        C07 05667 RS

**B.**    **Incident**.

As of December 19, 2005, Plaintiffs were living in their 38½" motor home with 21 animals: 15 cats and 6 dogs. (Deposition of Kenneth Jackson, Exhibit 2 to Declaration of Dirk D. Larsen filed herewith ["Ex. 2"] at 10:6-11, 29:4-30:9; Deposition of Lee Jackson, Exhibit 3 to Declaration of Dirk D. Larsen filed herewith ["Ex. 3"] at 10:18-23.) Plaintiffs generally parked their motor home in front of a Safeway store in Santa Clara, California, where Mr. Jackson worked, but they moved it depending on their daily schedule. (Ex. 2 at 10:12-21; Ex. 3 at 11:6-12:22.) When Mr. Jackson finished his work shift at approximately noon on December 19, 2005, Plaintiffs drove their motor home to a parking lot in front of a Mervyn's store in Santa Clara. (Ex. 2 at 19:10-20:23.)

At approximately 1:30 p.m. on December 19, 2005, SVACA Officer Albert Davis received a call from a concerned citizen, who reported observing "animals and people in bad health" in a motor home parked at the Mervyn's store. (Davis Dec., ¶ 3; Ex. A to Davis Dec.) The caller indicated that four to five dogs and two to three cats were being kept in the motor home. (Davis Dec., ¶ 3; Ex. A to Davis Dec.) SVACA Officer Morris responded to the scene, approached Plaintiffs, and explained the reason for her visit. (Morris Dec., ¶¶ 3, 4.) Ms. Jackson brought two dogs out of the motor home for Officer Morris to inspect: Minilinn and Calae. (Ex. 2 at 34:25-35:3.) Minilinn was wearing a diaper due to heavy bleeding; Calae had a broken jaw, a condition from which she had suffered for at least one year. (Ex. 2 at 35:4-36:8, 37:10-38:4.)

After inspecting Minilinn and Calae, Officer Morris entered the motor home. (Ex. 2 at 38:21-39:9.) She was appalled by the clutter and strong stench of ammonia resulting from urine. (Morris Dec., ¶ 5) Four dogs were tied to a couch, one to a bathroom cabinet and one to the kitchen stove. (Morris Dec., ¶ 5) Officer Morris noticed that the small dogs were underweight. (Morris Dec., ¶ 5.) She observed that their coats were matted and their nails overgrown. (Morris Dec., ¶ 5.) At the rear of the motor home, two cat "condominiums" housed six cats each, one housed two feral cats, and a smaller condominium contained the remaining cat. (Morris Dec., ¶ 5; Ex. 2 at 49:20-51:1.) The litter boxes contained large amounts of fecal matter, and there were numerous flies inside the motor home. (Morris Dec., ¶ 5; Ex. 2 at 51:2-11, 88:3-6.) Officer Morris observed that the cats exhibited health problems such as shriveled ears, sneezing, and discharge from their eyes and nose. (Morris Dec., ¶ 5.)

1    Officer Morris exited the motor home and called for assistance. (Morris Dec., ¶ 6; Ex. 3 at

2  40:23-41:15.) SVACA Officer Davis arrived at the scene, as did City of Santa Clara Police Officers.

3  (Ex. 3 at 40:23-41:15.) Officers Morris and Davis determined that the animals would be removed from

4  the motor home in order to protect their health and safety. (Morris Dec., ¶ 6.) Ms. Jackson grabbed the

5  door of the motor home in an attempt to lock it and thus refuse entry to the officers. (Ex. 3 at 45:6-14.)

6  Ms. Jackson claims that Officer Davis approached her, grabbed her by the arm, "roll[ed] his fist" and

7  "swung" her away from the door.[1] (Ex. 3 at 45:14-46:3.) The Santa Clara police officers pulled Ms.

8  Jackson away from the motor home and led her to their patrol vehicle. (Ex. 3 at 46:5-47:11.) Officer

9  Morris took photographs of the interior of the motor home. (Morris Dec., ¶ 6; Ex. A to Morris Dec.)

10  The SVACA officers then removed the animals from the motor home and took them to SVACA

11  pursuant to Penal Code § 597.1. (Ex. 2 at 71:5-10, Davis Dec., ¶ 5.) Ms. Jackson experienced soreness

12  in her neck and wrist following the incident, but did not seek medical treatment for these alleged

13  injuries. (Ex. 2 at 97:10-19.)

14    Officer Davis provided Plaintiffs with a Notice of Seizure of Animals pursuant to Penal Code

15  § 597.1. (Davis Dec., ¶ 5; Ex. B to Davis Dec.) Plaintiffs were also provided with a Declaration of

16  Ownership or Right to Keep Animal, either that day or the following day, which they completed in order

17  to request a post-seizure hearing. (Ex. 2 at 74:11-77:1.) On December 21, 2005, Officer Davis provided

18  Plaintiffs with a letter in which he notified them that the hearing would take place at SVACA's offices at

19  9:00 a.m. on December 22, 2005. (Davis Dec., ¶ 6; Ex. C to Davis Dec.) Mr. Jackson received this

20  letter in advance of the hearing. (Ex. 2 at 77:13-78:4.) Captain Russ Patterson of the Campbell Police

21  Department conducted the hearing in his capacity as *pro tempore* SVACA Hearing Officer. (Patterson

22  Dec., ¶ 3.) Both Plaintiffs attended the hearing, both had the opportunity to speak, and both actually did

23  speak. (Ex. 2 at 79:23-80:7.) Captain Patterson determined that the seizure and impoundment of the

24  animals were proper and justified. (Patterson Dec., ¶ 5, Ex. 2 at 81:9-20.) He made the following

25  findings in support of this determination:

26

27  _____

28  [1]Officer Davis disputes this characterization of events. However, for purposes of this summary-judgment motion
    only, defendants assume that the version of events related by the purported victim of the alleged force, Ms. Jackson, is true.

1        1.    At the time of the seizure, on December 19, 2005, plaintiffs were living in a motor home

2    with six adult dogs and fifteen adult cats;

3        2.    The inside of the motor home was cluttered and had an overwhelming stench of urine;

4    and there were numerous flies present;

5        3.    One of dogs, a white Maltese, was hemorrhaging, and had severe dental problems and

6    overgrown nails;

7        4.    Another dog, a Shih Tzu, had suffered a broken jaw approximately one year earlier.  This

8    dog was also blind, underweight, had severe dental problems, and problems with his nails and ears;

9        5.    A Labrador mix was underweight with overgrown nails;

10        6.    A male Lhasa Apso had overgrown nails and a matted coat;

11        7.    A female Lhasa Apso was underweight, had a matted coat, and overgrown nails;

12        8.    A Papillon mix was underweight and had overgrown nails;

13        9.    Twelve cats were divided into two cat condos at six cats per condo at the far end of the

14    motor home.  Two feral cats shared another cat condo; and one remaining cat was confined to a small

15    crate;

16        10.    Litter boxes contained large amounts of fecal matter;

17        11.    The water bowls inside the cat condos were either empty or barely filled with water;

18        12.    The cats appeared to have health problems, including shriveled ears and missing fur;

19        13.    Some of the cats displayed signs of upper respiratory infection, including sneezing and

20    discharge from the eyes and nose.

21    (Patterson Dec., ¶ 5; Ex. A to Patterson Dec.)  Captain Patterson concluded that (1) there was a

22    reasonable basis to believe the animals to be infected with disease transmittable to humans and to be

23    potentially dangerous so as to be a threat to public health, safety or property; (2) there was a reasonable

24    basis to believe that such seizure and impoundment was necessary to protect the public health or safety;

25    (3) the animals were being cruelly treated; and (4) the officer had reasonable grounds to believe that very

26    prompt action was required to protect the health or safety of the animals or others. (Patterson Dec., ¶ 6;

27    Ex. A to Patterson Dec.)

28        Following the hearing of December 22, 2005, Officer Davis furnished Plaintiffs with a letter in

-4-

1    which he informed them that they had violated Penal Code § 597.1 by failing to provide proper care for

2    the animals, and that they had also violated Santa Clara's vaccination, licensing and animal-limit

3    ordinances. (Davis Dec., ¶ 7; Ex. D to Davis Dec.)  In the letter, Officer Davis advised Plaintiffs that

4    SVACA would consider returning "Justice," a neutered black Labrador mix, if Plaintiffs paid the

5    required boarding fees and demonstrated to SVACA that they could provide the necessary care by

6    January 5, 2006. (Davis Dec., ¶ 7; Ex. D to Davis Dec.)  On that date, SVACA Director Dan Soszynski,

7    Officer Davis, and a representative of the Santa Clara District Attorney's office met with Plaintiffs and

8    inspected their motor home. (Davis Dec., ¶ 8; Soszynski Dec., ¶ 5.)  They determined that Plaintiffs had

9    not cleaned their motor home sufficiently and had not demonstrated the ability to provide proper care for

10   Justice. (Davis Dec., ¶ 8; Soszynski Dec., ¶ 5.)  In addition, Plaintiffs did not pay the boarding,

11   veterinary and impound fees for their animals pursuant to Penal Code § 597.1(f)(4). (Soszynski

12   Dec., ¶ 5.)  Accordingly, Justice was not returned to Plaintiffs. (Soszynski Dec., ¶ 5.)

13          On January 6, 2006, the animals were formally turned over to the Humane Society Silicon

14   Valley. (Soszynski Dec., ¶ 6.)

15          **C.    Pleading Allegations**.

16          For purposes of this motion, Plaintiffs allege six causes of action against SVACA, Officer Davis

17   and Officer Morris, one separate cause of action against SVACA, and one cause of action against the

18   City of Campbell. (Plaintiffs' First Amended Complaint ["FAC"], Ex. 1 to Larsen Dec.)  The causes of

19   action against SVACA, Davis and Morris are all based on the following allegations:

20                  Defendants unlawfully entered Plaintiff's [sic] motorhome, unlawfully
                    seized Plaintiffs' pet animals, unlawfully detained Plaintiffs and assaulted
21                  and battered Lee Jackson, causing Plaintiffs severe mental, emotional and
                    physical harm and depriving them of their property, pet animals in
22                  violation of their rights under the U.S. Constitution, Amendment 4 and
                    California Constitution, Article 1, Section 13.
23

24   The claims based on these allegations are (1) first cause of action, which contains only the text quoted

25   above; (2) fourth cause of action for negligent infliction of emotional distress; (3) fifth cause of action

26   for assault and battery in violation of California Penal Code §§ 241 and 242; (4) sixth cause of action for

27   intentional infliction of emotional distress; (5) seventh cause of action for conversion; (6) eighth cause

28   of action, brought pursuant to 42 U.S.C. § 1983, for unreasonable search and seizure in violation of the

-5-

1  Fourth and Fourteenth Amendments.

2         Plaintiffs' third cause of action alleges that SVACA "negligently hired, trained and supervised

3  employees including A. Morris, Al Davis ... who participated in the events surrounding the unlawful

4  seizure of Plaintiffs' pet animals on 12-19-05." (FAC at 6.)

5         The only cause of action alleged against the City of Campbell is Plaintiffs' second cause of

6  action, which states:

7                  Defendant unlawfully conducted a post-seizure hearing in which
                   Defendant found that the seizure of Plaintiffs' property on 12-19-05 was
8                  lawful.  Said finding was a denial of the due process rights of Plaintiffs
                   and was an abuse of discretion violating Plaintiff's [sic] rights to a fair due
9                  process hearing.

10  (FAC at 5.)

11        Plaintiffs seek punitive damages from Officers Morris and Davis, alleging that they were guilty

12  of malice, fraud and oppression.  (FAC at 13.)  This prayer for relief does not add any new factual

13  allegations against Officers Davis and Morris.  (*See* FAC at 13.)

14  **III.    ARGUMENT**

15        A.    **Standard of Review**.

16        Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories,

17  and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

18  material fact and the moving party is entitled to judgment as a matter of law."  F.R.C.P. 56(c).  It pierces

19  the pleadings and puts the opponent to the test of affirmatively coming forward with sufficient evidence

20  for its claims to create a genuine issue of fact for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325

21  (1986).  In order to meet its initial burden, "the moving party must either produce evidence negating an

22  essential element of the nonmoving party's claim or defense or show that the nonmoving party does not

23  have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan*

24  *Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

25        In opposing a motion for summary judgment, the adverse party "may not rest upon the mere

26  allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as

27  otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for

28  trial."  F.R.C.P. 56(e).  In the absence of such a response, "summary judgment, if appropriate, shall be

-6-

1  entered against the adverse party." *Id.*

2      **B.**    <u>**Plaintiffs' State-Law Claims Have No Merit as a Matter of Law**</u>.

3      Plaintiffs' first, third, fourth, fifth, sixth and seventh causes of action are based on California law.

4  (*See* FAC at 4, 6, 7, 8, 9 and 10).[2]  However, all actions taken by defendants during the subject incident

5  were also based on, and authorized by, California law—namely, California Penal Code § 597.1.

6  Accordingly, to the extent that defendants followed the procedure set forth in § 597.1, they cannot have

7  committed any state-law tort against Plaintiffs.[3]  As discussed in the following subsections, defendants

8  followed this procedure.  Moreover, to the extent they exercised their discretion in enforcing § 597.1,

9  they did so in a manner that did not constitute any state-law tort, and for which they are immune from

10  liability under provisions of the California Government Code.

11      Because moving defendants are public entities or public employees, the provisions of the

12  California Tort Claims Act, Government Code §§ 810 *et seq*, apply to state-law claims asserted against

13  them.  Government Code § 815 provides, in relevant part:

14          Except as otherwise provided by statute:
        (a)  A public entity is not liable for an injury, whether such injury arises

15          our of an act or omission of the public entity or a public employee or any
        other person.

16  

17  Accordingly, any liability on the part of SVACA and the City of Campbell must be pursuant to statute,

18  not common law.  *See Cochran v. Herzog*, 155 Cal.App.3d 405, 409, 205 Cal.Rptr. 1 (1984).  A public

19  employee may be held liable the same as a private person, and the public-entity employer may be held

20  vicariously liable for the employee's torts committed within the scope of his employment.  Cal. Gov't.

21  Code §§ 820(a), 815.2(a).  However, the public entity is also entitled to any immunities to which the

22  employee is entitled.  Cal. Gov't. Code § 815.2(b).

    **1.**    <u>**The Seizure of the Animals Was Lawful as Authorized by California Penal**</u>
23          <u>**Code § 597.1**</u>.

24      California Penal Code § 597.1 makes it a crime to keep an animal without proper care and

25  

26      [2]Plaintiffs' first cause of action does not state an explicit theory of liability but, like the other causes of action,
mentions an alleged violation of both Art. I § 13 of the California Constitution and of the Fourth Amendment to the U.S.
27  Constitution.

28      [3]Plaintiffs do not challenge the validity of California Penal Code § 597.1 under the California or U.S. Constitution.

1  attention, and sets forth the procedure by which animal-control officers may seize animals kept in

2  violation of its provisions.  Section 597.1(a) provides, in pertinent part:

> Every owner, driver, or keeper of any animal who permits the animal to be
> in any building, enclosure ... without proper care and attention is guilty of
> a misdemeanor. Any... animal control officer shall take possession of the
> stray or abandoned animal and shall provide care and treatment for the
> animal until the animal is deemed to be in suitable condition to be returned
> to the owner. When the officer has reasonable grounds to believe that very
> prompt action is required to protect the health or safety of the animal or
> the health or safety of others, the officer shall immediately seize the
> animal and comply with subdivision (f). [...] The cost of caring for and
> treating any animal properly seized under this subdivision shall constitute
> a lien on the animal and the animal shall not be returned to its owner until
> the charges are paid, if the seizure is upheld pursuant to this section.

9  Under § 597.1(f), the officer who seizes the animals must provide the owner "with the

10  opportunity for a postseizure hearing to determine the validity of the seizure or impoundment, or both,"

11  in the form of a Declaration of Ownership that the owner must sign and return to the seizing agency

12  within 10 days of the date of the notice.  Cal. Pen. Code § 597.1(f)(1)(D).  The post-seizure hearing must

13  be conducted within 48 hours of the request.  *Id.*, sub. (f)(2).  The agency may utilize the services of a

14  hearing officer from outside the agency to conduct the hearing.  *Id.*  If, at the hearing, it is determined

15  that the seizure was justified:

> the owner or keeper shall be personally liable to the seizing agency for the
> cost of the seizure and care of the animal, the charges for the seizure and
> care of the animal shall be a lien on the animal, and the animal shall not be
> returned to its owner until the charges are paid and the seizing agency or
> hearing officer has determined that the animal is physically fit or the
> owner demonstrates to the seizing agency's or the hearing officer's
> satisfaction that the owner can and will provide the necessary care.

21  *Id.*, sub. (f)(4).  Moreover,

> if the charges for the seizure or impoundment and any other charges
> permitted under this section are not paid within 14 days of the seizure, or,
> if the owner, within 14 days of notice of availability of the animal to be
> returned, fails to pay charges permitted under this section and take
> possession of the animal, the animal shall be deemed to have been
> abandoned and may be disposed of by the impounding officer.

26  *Id.*, sub. (h).

27  Here, SVACA and Officers Morris and Davis complied with § 597.1 in every respect.  Officer

28  Morris had reasonable grounds to believe that Plaintiffs were keeping the animals without proper care

-8-

1    and attention based on the report from the concerned citizen; her inspection of a hemorrhaging dog and a

2    dog with a broken jaw; and her inspection of the motor home—which contained 21 animals, an

3    overwhelming stench of urine, litter boxes full of fecal matter, underweight animals, animals exhibiting

4    symptoms of disease, and numerous flies. (Morris Dec., ¶¶ 3, 5; Davis Dec., ¶ 3.) The number of

5    animals alone constituted a violation of Santa Clara Municipal Code § 6.30.020, which limits to three

6    the total number of dogs and cats that may be kept at one location.[4] After the officers seized the animals,

7    they provided Plaintiffs with the opportunity to request a post-seizure hearing. Cal. Pen. Code

8    § 597.1(f)(1)(D); Davis Dec., ¶¶ 5-6. When Plaintiffs did request a hearing, SVACA conducted one

9    within 48 hours, and utilized the services of a hearing officer from a different agency—the City of

10    Campbell. Cal. Pen. Code § 597.1(f)(2); Soszynski Dec., ¶ 4.  Plaintiffs were given the opportunity to

11    speak at the hearing. (Ex. 2 at 79:23-80:7.) Following the hearing, SVACA gave Plaintiffs the

12    opportunity to pay the costs of the seizure and care of the animals, and to demonstrate their ability to

13    care for Justice properly. Cal. Pen. Code § 597.1(f)(4); Davis Dec., ¶¶ 7, 8. When Plaintiffs failed to do

14    so, the animals were deemed abandoned, thus justifying SVACA's turning them over to Humane Society

15    Silicon Valley. Cal. Pen. Code § 597.1(h); Soszynski Dec., ¶¶ 5, 6.

16         Because the seizure, post-seizure hearing and ultimate disposition of the animals complied with

17    § 597.1, neither SVACA, its officers nor the City of Campbell can be held liable to Plaintiffs under

18    California law unless Plaintiffs can show that the defendants complied with § 597.1 in an unlawful

19    manner. As discussed in the following sections, Plaintiffs cannot make such a showing, and SVACA,

20    Officer Davis, Officer Morris and the City of Campbell are thus entitled to judgment as a matter of law.

21         **2.    Because Art. I § 13 of the California Constitution Does Not Provide a Private
22         Right of Action, Plaintiffs' Claims under That Provision Have No Merit as a
         Matter of Law.**

23         Plaintiffs' first, fourth, fifth, sixth, seventh and eighth causes of action all allege a violation of

24    Art. I § 13 of the California Constitution, the counterpart to the Fourth Amendment's prohibition against

25    unreasonable searches and seizures. *See People v. Medina*, 7 Cal.3d 30, 36, 101 Cal.Rptr. 521 (1972).

26

27    _____

28    [4]Santa Clara Municipal Code § 6.30.020(a) provides: "No person shall keep or maintain more than a total of three
     adult dogs and/or cats (any combination) over four months of age, at any street address."

1    However, no California court has held that Art. I § 13 provides for a private right of action for damages.

2    *See Bates v. Arata*, 2008 WL820578, at 4 (N.D. Cal. 2008) (declining to recognize a private right of

3    action for an alleged violation of Art. I § 13 in the absence of such recognition on the part of California

4    courts).  Accordingly, Plaintiffs cannot recover damages for Defendants' alleged violation of Art. I § 13

5    of the California Constitution.

6            **3.**     **Because Officer Davis Applied Only Reasonable Force to Ms. Jackson, He and SVACA Cannot Be Held Liable for Assault and Battery.**

7    .

8         Plaintiffs' fifth cause of action alleges that defendants' conduct "constitute[s] assault and battery

9    in violation of Penal Code sections 241 and 242."  California Penal Code § 240 defines assault as "an

10   unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."

11   Penal Code § 242 defines battery as "any willful and unlawful use of force or violence upon the person

12   of another."  Here, the only instance of force applied to a Plaintiff by any moving defendant is Officer

13   Davis's pulling Ms. Jackson away from the door of the motor home in order to effect the seizure.

14   Accordingly, Plaintiffs claim for assault and battery must refer to this instance.

15        A police officer is entitled to use reasonable force to make an arrest, prevent a suspect's flight, or

16   overcome resistance.  Cal. Pen. Code § 835a; *Edison v. City of Anaheim*, 63 Cal.App.4th 1269,

17   1272-1273, 74 Cal.Rptr.2d 614 (1998).  The reasonableness standard is an objective one, viewed from

18   the perspective of a reasonable officer on the scene, and is highly deferential to the officer's need to

19   protect himself and others.  *Martinez v. County of Los Angeles*, 47 Cal.App.4th 334, 343, 54 Cal.Rptr.2d

20   772 (1996).  The plaintiff must prove unreasonable force as an element of the tort.  *Edison, supra,* at

21   1272.

22        Here, Officer Davis used only that degree of force that was necessary to overcome Ms. Jackson's

23   resistance to the lawful seizure of the animals.  As discussed in section III(B)(1), *supra*, that seizure was

24   itself authorized under Penal Code § 597.1 based on Officer Morris's inspection of the motor home.  Ms.

25   Jackson placed herself in front of the door to the motor home in order to refuse entry to the officers.

26   (Ex. 3 at 45:6-14)  Officer Morris then grabbed her by the arm and pulled her away from the door so that

27   the seizure could proceed.  (Ex. 3 at 45:14-46:3)  While Ms. Jackson may have experienced some

28   soreness following this contact, the extent of the injury did not cause her to seek medical treatment.  (Ex.

1  2 at 97:10-19.)  In addition, Officer Davis did apply force to Ms. Jackson any longer than was necessary

2  to overcome her resistance to the lawful seizure.  (Ex. 3 at 45:14-47:11.)  Under these circumstances,

3  Officer Davis's application of force against Ms. Jackson was objectively reasonable.  Accordingly, he

4  and SVACA are entitled to judgment as a matter of law as to Plaintiffs' fifth cause of action for assault

5  and battery.

6       **4.    Because Plaintiffs Have Not Shown that SVACA Knew of Its Employees**
7       **Alleged Unfitness, They Cannot Sustain Their Third Cause of Action for**
        **Negligent Hiring, Training and Supervision.**

8       Under California law,  "[a]n employer may be liable to a third person for the employer's

9  negligence in hiring or retaining an employee who is incompetent or unfit."  *Roman Catholic Bishop v.*

10  *Superior Court*, 42 Cal.App.4th 1556, 1564, 50 Cal.Rptr.2d 399 (1996) (citation omitted).  *Roman*

11  *Catholic Bishop* bases this rule of direct employer liability on the Restatement Second of Agency, § 213.

12  *Id.* at 1565.  As explained in comment d to § 213: "[t]he principal may be negligent because he has

13  reason to know that the ... agent, because of his qualities, is likely to harm others in view of the work or

14  instrumentalities entrusted to him."  Rest. 2d Agency, § 213, comment d.  The comment goes on to state

15  that "[l]iability results ... not because of the relation of the parties, but because the employer antecedently

16  had reason to believe that an undue risk of harm would exist because of the employment ... ."  *Id.*

17       The same is true of negligent training and supervision: liability can only exist if the employer

18  knows that the employee was a person who could not be trusted to act properly without supervision.

19  *Noble v. Sears, Roebuck & Co.*, 33 Cal.App.3d 654, 663-664, 109 Cal.Rptr. 269 (1973); *see Federico v.*

20  *Superior Court (Jenry G.)*, 59 Cal.App.4th 1207, 1216, 69 Cal.Rptr.2d 370 (1997).

21       As discussed in the previous sections, no SVACA employee committed a state-law tort against

22  Plaintiffs.  However, even if they had, Plaintiffs would have to show that SVACA knew of those

23  employees' specific propensities to commit such violations in order to sustain a claim against SVACA

24  for negligent hiring, training or supervision.  But Plaintiffs have produced no such evidence.

25  Accordingly, SVACA is entitled to judgment as a matter of law as to Plaintiffs' third cause of action.

26       **5.    Because Plaintiffs Abandoned Their Interest in the Animals, Their Seventh**
        **Cause of Action for Conversion Has No Merit as a Matter of Law.**
27

28       Under California law, the elements of the tort of conversion are: "(1) the plaintiff's ownership or

-11-

1    right to possession of personal property; (2) the defendant's disposition of the property in a manner that

2    is inconsistent with the plaintiff's property rights; and (3) resulting damages." *Fremont Indem. Co. v.*

3    *Fremont General Corp.*, 148 Cal.App.4th 97, 119, 55 Cal.Rptr. 621 (2007). Plaintiffs' cause of action

4    for conversion fails at the first element: because they had abandoned their property interest in the

5    animals, they possessed no interest that SVACA's disposition of the animals could disturb.

6         California Penal Code § 597.1(h) provides that, if the owner of an impounded animal fails to pay

7    the costs of the seizure and impoundment within fourteen days of the seizure, the animal is deemed

8    "abandoned" and may be disposed of by the impounding agency. In *Broden v. Marin Humane Society*,

9    the plaintiff failed to pay the impoundment costs for his seized reptiles. *Broden v. Marin Humane*

10   *Society*, 70 Cal.App.4th 1212, 1219, 1226, 83 Cal.Rptr.2d 235 (1999). He later sued the defendant

11   humane society for the cost of the lost offspring of his animals. *Id.* The court rejected this claim,

12   holding that, under § 597.1(h), the plaintiff had abandoned his animals and thus "no longer had any

13   possessory or ownership interest in the animals that could support an award of damages." *Id.*

14        The same reasoning applies here. Because Plaintiffs failed to pay the lien representing the costs

15   for the seizure and impoundment of the animals, they no longer had any property interest in the animals

16   that could support an award of damages. In essence, Plaintiffs are suing under California law to recover

17   damages for the loss of a property interest that, under California law, Plaintiffs did not possess.

18   Accordingly, Plaintiffs seventh cause of action for conversion has no merit as a matter of law.

19          6.    **Because the Officers' Conduct During the Seizure Was Lawful and Proper,
              Plaintiffs Cannot Sustain Claims for Negligent and Intentional Infliction of**
20            **Emotional Distress.**

21        Plaintiffs' fourth and sixth causes of action are for negligent and intentional infliction of

22   emotional distress, respectively. (FAC at 7, 9.) A claim for intentional infliction of emotional distress

23   requires that the plaintiff prove the following elements: (1) outrageous conduct by the defendant; (2) the

24   defendant's intention of causing, or reckless disregard of the probability of causing, emotional distress;

25   (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation

26   of the emotional distress by the defendant's outrageous conduct. *Hernandez v. General Adjustment*

27   *Bureau*, 199 Cal.App.3d 999, 1007, 245 Cal.Rptr. 288 (1988). The court determines as a matter of law

28   whether the defendant's conduct may reasonably be regarded as so extreme and outrageous that recovery

-12-

1  is permissible. *Tollefson v. Roman Catholic Bishop*, 219 Cal.App.3d 843, 858, 268 Cal.Rptr. 550 (1990)

2  (disapproved on other grounds in *Scott v. Pacific Gas & Electric Co.*, 11 Cal.4th 454, 474, n. 5, 46

3  Cal.Rptr.2d 427 (1995).

4      The negligent causing of emotional distress is not an independent tort. *Marlene F. v. Affiliated*

5  *Psychiatric Medical Clinic, Inc.*, 48 Cal.3d 583, 588, 257 Cal.Rptr. 98 (1989) (internal citation omitted).

6  Instead, emotional distress is a common additional element of damages, which may be given when the

7  cause of action is otherwise established. *See Long v. PKS, Inc.*, 12 Cal.App.4th 1293, 1298, 16

8  Cal.Rptr.2d 103 (1993) (internal citations omitted).  A negligence action "requires a showing that the

9  defendant owed the plaintiff a legal duty, that the defendant breached the duty, and that the breach was a

10  proximate or legal cause of injuries suffered by the plaintiff." *Ann M. v. Pacific Plaza Shopping Center*,

11  6 Cal.4th 666, 673, 25 Cal.Rptr.2d 137 (1993) (internal citation omitted).

12      Here, as discussed in the preceding sections, the actions of Officers Morris and Davis were

13  lawful and proper.  Officer Morris's inspection of the animals and the motor home provided reasonable

14  grounds to believe that immediate seizure of the animals was necessary.  Once the officers made this

15  determination, they seized the animals as required by Penal Code § 597.1(a), and SVACA provided a

16  post-seizure hearing.  Officer Davis applied only the amount of force necessary to overcome Ms.

17  Jackson's resistance to the lawful seizure.  Under these circumstances, the conduct of the officers'

18  conduct was proper as opposed to outrageous, and cannot have constituted a breach of any duty owed to

19  Plaintiffs.  Accordingly, SVACA, Officer Davis and Officer Morris are entitled to judgment as a matter

20  of law as to Plaintiffs' fourth and sixth causes of action.

21      **7.     SVACA and Its Officers Are Entitled to Discretionary Immunity Pursuant to
            California Government Code §§ 820.2 and 815.2(b).**

22

23      California Government Code § 820.2 provides that "a public employee is not liable for an injury

24  resulting from his act or omission where the act or omission was the result of the exercise of the

25  discretion vested in him, whether or not such discretion be abused."  Government Code § 815.2(b)

26  makes this section applicable to the employee's public-entity employer.

27  ///

28  ///

-13-

1    The immunity afforded by § 820.2 applies where a statute commits a decision to the discretion of

2    a public employee. *See Posey v. State of California*, 180 Cal.App.3d 836, 849-850, 225 Cal.Rptr. 830

3    (1986). In *Posey*, the immunity applied to a police officer's removal of an abandoned vehicle from the

4    highway because the statute in question—California Vehicle Code § 22651—provided that an officer

5    "may" effect such removal, thus committing the decision to the officer's discretion. *Id.* Here, similarly,

6    Penal Code § 597.1(a) provides for an immediate seizure of animals when an animal-control officer "has

7    reasonable grounds to believe" that such seizure will protect the animals' health and safety. Section

8    597.1 thus commits to the discretion of the officer the decision as to whether such "reasonable grounds"

9    exist. Officer Morris's decision to enter Plaintiffs' motor home, once she had inspected the two injured

10   dogs, was made in order to determine whether such "reasonable grounds" existed, and thus falls within

11   the immunity. In addition, the officers' determination that such "reasonable grounds" actually did exist

12   was similarly an exercise of their discretion, and thus also falls within § 820.2's immunity.

13   A decision by an officer to use reasonable force in an arrest situation is also an exercise of

14   discretion protected by § 820.2. *Price v. County of San Diego*, 990 F.Supp.1230, 1244 (S.D. Cal. 1998).

15   Here, as discussed in section III(B)(3), *supra*, Officer Davis's application of force to Ms. Jackson was

16   objectively reasonable under the circumstances. Accordingly, the immunity applies to Plaintiffs' state-

17   law claims based on Officer Davis's use of force.

18   Because the actions of SVACA's officers were the result of the exercise of discretion vested in

19   them, those officers are immune from liability for Plaintiffs' state claims pursuant to Government Code

20   § 820.2. SVACA is also immune as the officers' public-entity employer pursuant to Government Code

21   § 815.2(a).

22   **8.    SVACA and Its Officers Are Entitled to Investigation Immunity Pursuant to
         California Government Code §§ 821.6 and 815.2(b).**

23

24   California Government Code § 821.6, commonly referred to as the "Prosecutor's Immunity" or

25   "Investigation Immunity," provides that "[a] public employee is not liable for injury caused by his

26   instituting or prosecuting any judicial or administrative proceeding within the scope of his employment,

27   even if he acts maliciously and without probable cause."

28   ///

-14-

1    Government Code § 821.6 is a broad immunity that encompasses all conduct related to the

2   investigation and filing of charges, including investigations by police officers. *See, e.g., Baughman v.*

3   *State of California*, 38 Cal.App.4th 182, 192, 45 Cal.Rptr. 2d 82 (1995). This immunity is applicable to

4   actions for libel, slander, negligence and infliction of emotional distress, among others. *See Kemmerer*

5   *v. County of Fresno*, 200 Cal.App.3d 1426, 1436, 246 Cal.Rptr. 609 (1988); *see also Jenkins v. County*

6   *of Orange*, 212 Cal.App.3d 278, 260 Cal.Rptr. 645 (1989). The *Jenkins* court held that ". . . when the

7   duty to investigate crime and to institute criminal proceedings is lodged with any public officer, it is for

8   the best interests of the community as a whole that [the officer] be protected from harassment in the

9   performance of that duty." *Jenkins*, 212 Cal.App.3d at 284. Government Code § 815.2(b) applies this

10   immunity to public entities as well as public employees.

11    Here, all events alleged in the FAC were prompted by a call from a concerned citizen indicating

12   that Plaintiffs were keeping animals in violation of California Penal Code § 597.1 and Santa Clara

13   Municipal Code § 6.30.020. Accordingly, every act on the part of SVACA's officers was performed as

14   part of an investigation into those violations. The officers and SVACA are thus entitled to immunity

15   from liability for Plaintiffs' state claims pursuant to California Government Code §§ 821.6 and 815.2(b).

16   **C.    Plaintiff's Federal Cause of Action Against SVACA, Officer Davis and Officer Morris Has No Merit as a Matter of Law.**

17

18    Plaintiffs' eighth cause of action, brought pursuant to 42 U.S.C. § 1983, alleges a violation of

19   "Plaintiffs' rights to be free of unreasonable searches and seizures under the Fourth and Fourteenth

20   Amendments to the U.S. Constitution." (FAC at 11.) As discussed in the following subsections, this

21   cause of action fails as a matter of law, whether it refers to Officer Morris's search of Plaintiffs' motor

22   home or Officer Davis's application of force to Ms. Jackson. In addition, Officers Morris and Davis are

23   entitled to qualified immunity, and Plaintiffs have produced no evidence of a widespread, persistent

24   custom, policy or practice sufficient to sustain a claim against SVACA under the *Monell* doctrine.[5]

25

26   _____

27    [5]Plaintiffs' first, fourth, fifth, sixth and seventh causes of action also refer to the Fourth Amendment to the U.S. Constitution, but all except the first clearly allege the state-law torts discussed in section III(B). (*See* FAC at 4, 7, 8, 9, 10.) To the extent the first cause of action alleges a violation of the Fourth Amendment, the discussion in the present section applies equally to that claim.

28

-15-

1        **1.**    **The "Automobile Exception" to the Warrant Requirement Justifies Officer**
2            **Morris's Search of Plaintiffs' Motor Home**.

3        A warrantless search of a residence does not violate the Fourth Amendment's prohibition against

4   unreasonable search and seizure if the officer has probable cause for the search and if exigent

5   circumstances exist to justify the search. *LaLonde v. County of Riverside*, 204 F.3d 947, 954 (9th Cir.

6   2000). "Probable cause requires only a fair probability or substantial chance of criminal activity, and we

7   determine the existence of probable cause by looking at the totality of the circumstances known to the

8   officers at the time." *U.S. v. Alaimalo*, 313 F.3d 1188, 1193 (9th Cir. 2002) (citations omitted).

9        One form of exigent circumstance is the "automobile exception" to the warrant requirement. In

10  *Carroll v. United States*, 267 U.S. 132, at 153 (1925), the Supreme Court held that warrantless searches

11  of automobiles were justified "where it is not practicable to secure a warrant because the vehicle can be

12  quickly moved out of the locality or jurisdiction in which the warrant must be sought." The Court later

13  formulated a second rationale for the automobile exception: "less rigorous warrant requirements govern

14  because the expectation of privacy with respect to one's automobile is significantly less than that relating

15  to one's home or office," because "[a]utomobiles, unlike homes, are subjected to pervasive and

16  continuing governmental regulation and controls[.]" *South Dakota v. Opperman*, 428 U.S. 364, 367-368

17  (1976). In *California v. Carney*, 471 U.S. 386 (1985), the Supreme Court held that both rationales

18  underlying the automobile exception support its extension to motor homes, which are also readily mobile

19  and subject to extensive regulation and inspection. *Id.* at 393. The Ninth Circuit quoted *Carney* with

20  approval in extending the automobile exception to cover houseboats as well. *U.S. v. Albers*, 136 F.3d

21  670, 672-673 (9th Cir. 1998).

22       Officer Morris's entry into Plaintiffs' motor home satisfies both the probable-cause and exigent-

23  circumstances requirements. With respect to probable cause, the "totality of the circumstances" known

24  to Officer Morris just prior to the search were as follows: a concerned citizen had reported six to eight

25  animals "in bad health" in the motor home, thus giving rise to the probability that Plaintiffs had violated

26  Penal Code § 597.1 and Santa Clara Municipal Code § 6.30.020; and Ms. Jackson herself showed

27  Officer Morris one dog wearing a diaper to control bleeding, and one dog with a broken jaw. Under

28  these circumstances, Officer Morris could and did reasonably conclude that there was at least a "fair

-16-

1  probability" or "substantial chance" of violations of law. *See Alaimalo*, 313 F.3d at 1193. Accordingly,

2  probable cause existed to support Officer Morris's entry into the motor home.

3      The automobile exception applies to satisfy the exigent-circumstances requirement. Like the

4  motor home in *Carney*, Plaintiffs' motor home was readily mobile and subject to extensive regulation.

5  In fact, just before the incident occurred, Plaintiffs had driven the motor home from Mr. Jackson's place

6  of employment to the Mervyn's parking lot, thus demonstrating the vehicle's ready mobility. (Ex. 2 at

7  19:10-20:23.) Moreover, they regularly drove the motor home in the period preceding the incident.

8  (Ex. 2 at 10:12-21; Ex. 3 at 11:6-12:22.) Because both requirements for a warrantless search were

9  present, Officer Morris's entry into Plaintiff's motor home did not constitute an unreasonable search and

10 seizure in violation of Plaintiffs' Fourth Amendment rights. Accordingly, Officer Morris is entitled to

11 judgment as a matter of law as to Plaintiffs' eighth cause of action.

12      **2.      Because Officer Davis's Use of Force Was Objectively Reasonable, It Did Not**
13           **Constitute a Violation of Ms. Jackson's Fourth Amendment Rights**.

14      Plaintiff's eighth cause of action alleges an unreasonable search and seizure in violation of

15 Plaintiffs' Fourth Amendment Rights. (FAC at 11.) Assuming that this cause of action encompasses a

16 theory of excessive force, any claim under that theory fails as a matter of law because the force Officer

17 Davis applied to Ms. Jackson was objectively reasonable under the circumstances.

18      "*[A]ll* claims that law enforcement officers have used excessive force—deadly or not—in the

19 course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the

20 Fourth Amendment and its 'reasonableness' standard[.]" *Graham v. Connor*, 490 U.S. 386, 395 (1989)

21 (emphasis in original). A seizure occurs when an "officer, by means of physical force or show of

22 authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968).

23 Because Plaintiffs allege the use of force in the context of an investigation and arrest situation, they

24 allege a "seizure" to which the Fourth Amendment "reasonableness" standard applies. Accordingly,

25 Plaintiffs' claim of excessive force must be analyzed under this standard.

26      Under the objective reasonableness standard, "[d]etermining whether the force used to effect a

27 particular seizure is 'reasonable' ... requires a careful balancing of 'the nature and quality of the intrusion

28 on the individual's Fourth Amendment interests' against the countervailing governmental interests at

1   stake." *Graham*, 490 U.S. at 396 (internal citations omitted). The officer's conduct must be evaluated

2   in light of the particular circumstances "from the perspective of a reasonable officer on the scene, rather

3   than with 20/20 vision of hindsight." *Id.* at 396-397. The standard does not require police officers to

4   use the "least intrusive means of responding to an exigent situation; they need only act within the range

5   of conduct [the law identified] as reasonable." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994), *cert.*

6   *denied*, 515 U.S. 1159 (1995). The court may make a determination on this issue at summary judgment

7   where the evidence, viewed in the light most favorable to the non-moving party, compels the conclusion

8   that the use of force was reasonable. *Hopkins v. Andaya*, 958 F.2d 881, 885 (9th Cir. 1992) (overruled

9   on other grounds as recognized in *Federman v. County of Kern*, 61 Fed.Appx. 438, 440 (2003)).

10          The factors courts analyze in determining whether a particular use of force was objectively

11  reasonable include the severity of the crime that prompted the use of the force, the threat posed by the

12  suspect to the officers at the scene, and whether the suspect was resisting. *Tatum v. City and County of*

13  *San Francisco*, 441 F.3d 1090, 1095 (9th Cir. 2006). In *Tatum*, one of the defendant officers placed the

14  decedent, who had been behaving erratically, in a bar arm-control hold and asked him to place his right

15  arm behind his back. *Id.* at 1093. Instead of complying, the decedent spun to his left, partially escaping

16  the officer's grasp, and continued to struggle and resist. *Id.* The officer then used the bar arm-control

17  hold to force the decedent to the ground. *Id.* Against continued resistance from the decedent, the

18  officers placed him in handcuffs. *Id.* The court held that this use of force was objectively reasonable

19  under the circumstances—especially the circumstance of the decedent's continued resistance. *Id.* at

20  1096-1097.

21          The facts of the present case are analogous to those of *Tatum*. While Ms. Jackson may not have

22  resisted to the same extent as the *Tatum* decedent, Officer Davis also did not apply the same degree of

23  force as the *Tatum* officers. Instead, as in *Tatum*, Officer Davis applied only that degree of force

24  necessary to overcome Ms. Jackson's resistance to the lawful search. In addition, while Ms. Jackson

25  may have posed little risk to the officers and others at the scene, she was forcibly resisting a lawful

26  seizure intended to protect the animals. (Ex. 3 at 45:6-47:11.) Moreover, any resulting physical injury

27  did not cause Ms. Jackson to seek medical treatment. (Ex. 2 at 97:10-19.) Under these circumstances,

28  any intrusion on Ms. Jackson's Fourth Amendment interests was minor compared to the countervailing

-18-

1   governmental interests at stake. Accordingly, Officer Davis's conduct was objectively reasonable.

2       With hindsight, one can speculate that less intrusive means may have sufficed to prevent Ms.

3   Jackson from obstructing the inspection. But the reasonableness standard looks to the perspective of an

4   officer on the scene, rather than "with the 20/20 vision of hindsight," and does not require that the least

5   intrusive means are applied—only that the means selected are objectively reasonable under the

6   circumstances. *Graham*, 490 U.S. at 396-397; *Scott*, 39 F.3d at 915. Accordingly, based on Ms.

7   Jackson's own version of events—and thus viewed in the light most favorable to her—Officer Davis did

8   not use excessive force in violation of Plaintiff's Fourth Amendment rights.

9           **3.    Officers Davis and Morris are Entitled to Qualified Immunity from Suit and Liability.**

10

11      The qualified immunity defense shields from § 1983 liability law enforcement officers

12  performing discretionary functions of their job, so long as their conduct does not violate clearly

13  established constitutional or statutory rights under an objective reasonableness standard. *Harlow v.*

14  *Fitzgerald*, 457 U.S. 800, 818 (1982). Claims of excessive force and challenges to warrantless searches

15  are both subject to this defense. *Saucier v. Katz*, 533 U.S. 194, 204-205 (2001); *Anderson v. Creighton*,

16  483 U.S. 635, 644 (1987). Qualified immunity is not just immunity from liability but also from suit,

17  meaning "an entitlement not to stand trial or face the other burdens of litigation." *Saucier*, 533 U.S. at

18  200. It is thus an appropriate issue for determination on a motion for summary judgment. *See id.* at 202.

19      The qualified immunity analysis has two prongs. The court first asks whether "taken in the light

20  most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a

21  constitutional right?" *Id.* at 201. Only if a constitutional right was violated should the court address the

22  next question: whether the right was clearly established in light of the circumstances, i.e., whether it

23  would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.* at

24  202. "If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to

25  the immunity defense." *Id.* at 205. Thus, even if an officer acts unconstitutionally, that officer is

26  entitled to qualified immunity if the officer objectively could have believed that his conduct was lawful.

27  *Act Up!/Portland v. Bagley*, 988 F.2d 868, 871 (9th Cir. 1993).

28  ///

1   While qualified immunity is an affirmative defense ultimately to be proved by the defendant, the

2   plaintiff has the initial burden of proving that the right in question was clearly established. *Houghton v.*

3   *South*, 965 F.2d 1532, 1534-1537 (9th Cir. 1992). Here, Plaintiff cannot satisfy that burden with respect

4   to both the search performed by Officer Morris and the use of force by Officer Davis.

5   **a.    Officer Morris Is Entitled to Qualified Immunity Because Probable
        Cause and Exigent Circumstances Justified the Warrantless Entry.**

6

7   .   Under clearly established law at the time of the incident, a warrantless entry into a residence to

8   conduct a search is not unreasonable under the Fourth Amendment if the officer has probable cause for

9   the search and exigent circumstances exist. *LaLonde*, 204 F.3d at 954. As discussed in section

10  III(C)(1), *supra*, Officer Morris's entry into the motor home satisfies both requirements. The report from

11  the concerned citizen and her inspection of the two dogs provided probable cause, and the automobile

12  exception provided exigent circumstances. Accordingly, Officer Morris's conduct was consistent with

13  Plaintiffs' clearly established rights under the Fourth Amendment. She is thus entitled to qualified

14  immunity from both liability and further litigation.

15  **b.    Officer Davis Is Entitled to Qualified Immunity Because He Did Not
        Use Force That Was Unnecessarily Painful, Protracted, or Degrading.**

16

17  With respect to Officer Davis's alleged use of excessive force against Ms. Jackson, case law in

18  effect at the time of the incident shows that an individual only had a clearly established right to be free

19  from force which is unnecessarily painful, protracted or degrading. In *Palmer v. Sanderson*, 9 F.3d

20  1433, 1436 (9th Cir. 1993), for example, the Ninth Circuit denied qualified immunity to an officer who

21  tightly handcuffed an elderly man and refused to loosen the handcuffs. In *Drummond v. City of*

22  *Anaheim*, 343 F.3d 1052, 1061 (9th Cir. 2003), qualified immunity was unavailable where the officers

23  allegedly crushed a mentally ill individual against the ground, pressed their weight against his neck and

24  torso, and continued to do so despite his repeated cries for air. And in *Franklin v. Foxworth*, 31 F. 3d

25  873, 875-876 (9th Cir. 1994), it was objectively unreasonable for officers executing a search warrant to

26  remove a disabled, semi-naked man from his bed, handcuff him, and leave him sitting on a couch for

27  over two hours, even though he could have been returned to his bed after the search of his bedroom.

28  The facts of the present case do not approach those of *Palmer, Drummond* or *Franklin*. Here, by

-20-

1  contrast, Ms. Jackson was not handcuffed or thrown to the ground. While she may have experienced

2  some soreness to her neck and wrist, the pain was not of such a degree as to require medical attention.

3  (Ex. 2 at 97:10-19.) Her detention lasted no longer than was necessary to ensure that the lawful seizure

4  of the animals could proceed unimpeded. (Ex. 3 at 45:14-47:11.) Based on the law in effect in this

5  circuit at the time, Ms. Jackson had a clearly established right not to be subjected to force that was

6  unnecessarily painful or protracted. The force to which she testified to have been subjected was neither.

7  Accordingly, Officer Davis is entitled to immunity from both liability and further litigation.

8              **4.     Plaintiffs Cannot Support Their § 1983 Claim Against SVACA Under the**

9                       ***Monell* Doctrine.**

10  SVACA cannot be held liable for the unconstitutional acts of its officers under 42 U.S.C. § 1983

11  based solely on the doctrine of respondeat superior. *Monell v. Dept. of Social Services*, 436 U.S. 658,

12  694 (1978). A municipal agency may only be held liable for an official policy or informal custom that

13  caused the unconstitutional acts. *Id.* at 690-94. The custom must be so "persistent and widespread" that

14  it constitutes a "permanent and well settled city policy." *Id.* at 691. Indeed, "liability for improper

15  custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of

16  sufficient duration, frequency and consistency that the conduct has become a traditional method of

17  carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir.1996). The Ninth Circuit has even

18  found two incidents alone insufficient to impose *Monell* liability. *Meehan v. County of Los Angeles*, 856

19  F.2d 102, 107 (9th Cir.1988).

20  Here, no constitutional violation occurred, meaning that SVACA cannot be held liable under

21  § 1983. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). But even assuming a violation

22  occurred, the record is devoid of any evidence that SVACA maintained any unconstitutional policy or

23  practice resulting in the alleged deprivations. There is no evidence of a pattern of any sufficient

24  duration, frequency or consistency that could establish liability. No expert testimony or other evidence

25  has been submitted regarding SVACA's disciplinary processes, or its policies with respect to the rights

26  of those with whom its officers come into contact. Accordingly, SVACA is entitled to judgment as a

27  matter of law as to Plaintiff's eighth cause of action for deprivation of federal rights.

28  ///

-21-

DEFENDANTS SVACA, AL DAVIS, ANTJE MORRIS AND CITY OF CAMPBELL'S NOTICE OF MOTION AND MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P 56)
J:\1042\sf0016\Pld\MSJ-mot.mpa.wpd                                                        C07 05667 RS

1       **D.**    <u>**Plaintiffs' Second Cause of Action, Against the City of Campbell, for Violation of
2       Procedural Due Process Has No Merit as a Matter of Law**</u>.

3       The City of Campbell is entitled to judgment as a matter of law as to Plaintiffs' second cause of

4 action for two reasons: first, Campbell did not conduct the hearing at issue; second, the hearing as

5 authorized by California Penal Code § 597.1 did not result in a denial of Plaintiffs' due process rights as

6 a matter of law.[6]

7   .      **1.**    <u>**The City of Campbell Did Not Conduct the Post-Seizure Hearing**</u>.

8       Captain Patterson of the Campbell Police Department presided over the December 22, 2005

9 hearing at which he determined that the seizure of Plaintiffs' animals was proper and justified.

10 (Patterson Dec., ¶¶ 3, 5.) However, he did so not in his capacity as a Campbell police officer but as a *pro*

11 *tempore* SVACA hearing officer.  (Patterson Dec., ¶ 3.)  SVACA itself conducted the hearing, as it was

12 authorized to do pursuant to Penal Code § 597.1(f)(2).  Plaintiffs' allegation that the City of Campbell

13 conducted the hearing does not raise a genuine issue of material fact as to this question, as Plaintiffs may

14 not rest on the allegations in their complaint to counter the evidence SVACA and the City of Campbell

15 have produced.  *See* F.R.C.P. 56(e).

16       Even if Captain Patterson were deemed to have acted in his capacity as a Campbell employee,

17 liability could not attach to the City absent a showing that Campbell's custom, policy, practice or

18 deliberately indifferent training or supervision resulted in the alleged violation.  *See* section III(C)(4),

19 *supra*.  The record here is devoid of any evidence that the City of Campbell maintained any such custom

20 or practice, or exhibited deliberate indifference to Plaintiffs' rights.  Accordingly, the City of Campbell

21 is entitled to judgment as a matter of law as to Plaintiffs' second cause of action.

22       **2.**    <u>**The Conduct of the Post-Seizure Hearing Did Not Constitute a Violation of
23       Plaintiffs' Due Process Rights as a Matter of Law**</u>.

24       "The fundamental requirement of due process is the opportunity to be heard at a meaningful time

25 and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation omitted).

26 _____

27       [6]The second cause of action does not specify whether it is based on the California or U.S. Constitution.  Because
28 Art. I § 7 of the California Constitution does not provide a private right of action for damages, this section addresses the
Fourteenth Amendment to the U.S. Constitution. *See Bates v. Arata*, 2008 WL820578, at 4 (N.D. Cal. 2008).

-22-

1  Determining the procedural requirements necessary to satisfy due process in any one situation "requires
2  a sensitive inquiry into the competing governmental and private interests affected." *Goichman v.*
3  *Rheuban Motors Inc.*, 682 F.2d 1320, 1324 (9th Cir. 1982) (citing *Mathews*, 424 U.S. at 334.)  These
4  interests include the "private interest that will be affected by the official action," the "risk of an
5  erroneous deprivation" of that interest under the existing procedures and the "probable value, if any, of
6  additional or substitute procedural safeguards," and, finally, the interest of the government, including
7  "the function involved and the fiscal and administrative burdens that the additional or substitute
8  procedural requirement would entail." *Id.*

9      *Goichman* involved a due-process challenge to a Los Angeles ordinance that provided for a
10  hearing following the towage of the plaintiff's illegally parked vehicle. *Id.* at 1322.  Like Penal Code
11  § 597.1, the ordinance in question provided that the agency directing the impoundment must give the
12  owner an opportunity for a post-seizure hearing, and that the hearing must be held within 48 hours of
13  such request. *Id.* at 1323; Cal. Pen. Code § 597.1(f)(2).  The *Goichman* court held that the provisions
14  satisfied the requirements of due process of law. *Id.* at 1325.  While the private interest in the vehicle
15  was significant, the 48-hour delay before the hearing merely constituted a burden on the owner, one
16  without constitutional significance. *Id.* at 1324.  But the government's interests in imposing the cost of
17  the impoundment on the vehicle owner, retaining the vehicle as security for payment, and in the efficient
18  and inexpensive towage of illegally parked vehicles outweighed this private interest. *Id.* at 1324.  In
19  addition, requiring a hearing in under 48 hours would have placed an unmanageable burden on the city,
20  entailing preparation for the hearing, scheduling a hearing officer, and arranging for legal counsel. *Id.*

21      Penal Code § 597.1 is identical to the ordinance at issue in *Goichman* in all relevant respects.
22  Here, too, SVACA's interest in imposing the cost of the seizure on the animals' owners, retaining the
23  animals as security for payment, and enforcing laws intended to protect the animals' health and safety
24  outweigh Plaintiffs' private interest in possessing the animals for 48 hours.  Moreover, SVACA
25  followed the procedure set forth in § 597.1: it conducted the hearing within 48 hours of Plaintiffs'
26  request, and provided Plaintiffs with notice of and an opportunity to speak at the hearing. (Soszynski
27  Dec., ¶ 4; Ex. 2 at 77:13-78:4, 79:23-80:7.)  Accordingly, as in *Goichman*, Plaintiffs were afforded due
28  process of law through the conduct of the post-seizure hearing.

-23-

1    The Ninth Circuit has indicated its view of this question in *Daugherty v. Costello*, 24 Fed.Appx.

2    684, 686 (9th Cir. 2001), in which it found that the procedure set forth in Penal Code § 597.1 satisfied

3    the requirements of due process of law.

4    **E.    Plaintiffs Are Not Entitled to Recover Punitive Damages from Officers Davis and Morris as a Matter of Law**.

5

6    Officers sued in their individual capacity under 42 U.S.C. § 1983 are subject to punitive damages

7    only upon a showing that their conduct was "motivated by evil motive or intent, or [involved] reckless or

8    callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).

9    Where a plaintiff provides no evidence of the individual defendant's evil intent, the court may deny

10   punitive damages as a matter of law. *Ward v. San Jose*, 967 F.2d 280, 286 (9th Cir. 1991).

11   The standard for awarding punitive damages under California law is similar.  California Civil

12   Code § 3294 provides that a plaintiff must prove by "clear and convincing evidence that defendant has

13   been guilty of oppression, fraud, or malice."  In addition, where the plaintiff's ultimate burden of proof

14   is by clear and convincing evidence, that standard also applies on a summary-judgment motion.  *Basich*

15   *v. Allstate Ins. Co.*, 87 Cal.App.4th 1112, 1118-1120, 105 Cal.Rptr.2d 153 (2001).  "Punitive damages

16   are appropriate if the defendant's acts are reprehensible, fraudulent or in blatant violation of law or

17   policy."  *Tomaselli v. Transamerica Ins. Co.*, 25 Cal.App.4th 1269, 1287, 31 Cal.Rptr.2d 433 (1994).

18   Here, Plaintiffs have produced no evidence at all that the conduct of Officer Davis or Morris

19   exhibited evil intent, malice, fraud, oppression or a callous indifference to Plaintiffs' rights.  On the

20   contrary, as discussed in the preceding sections, the officers performed a lawful seizure of Plaintiffs'

21   animals in a manner both authorized by Penal Code § 597.1 and consistent with Plaintiffs' state and

22   federal rights.  Given these circumstances, there is simply no basis to award punitive damages under

23   state or federal law.  Accordingly, summary adjudication of this issue should be granted in favor of

24   Officers Davis and Morris.

25   ///

26   ///

27   ///

28   ///

1  IV.   **CONCLUSION**

2         For the foregoing reasons, Defendants respectfully request that the Court grant its motion for

3  summary judgment and dismiss all of Plaintiffs' claims against them with prejudice.  In the alternative,

4  Defendants respectfully request that the Court grant partial summary judgment in their favor as to any

5  one or more claims or prayers for relief against them, and dismiss such claims with prejudice.

6

7         Dated: July 30, 2008.

8                                                    LOW, BALL & LYNCH

9

10                                             By_____

11                                                    MARK F. HAZELWOOD
                                                     DIRK D. LARSEN
12                                                   Attorneys for Defendants
                                                     SILICON VALLEY ANIMAL CONTROL
13                                                   AUTHORITY, AL DAVIS, ANTJE MORRIS,
                                                     AND CITY OF CAMPBELL

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28