1  Harry C. Gilbert, Esq. (SBN 129944)
   Steven R. Myers, Esq. (SBN 203694)
2  JOSEPH COSTELLA & ASSOCIATES
3  215 Lennon Lane, Suite 200,
   Walnut Creek, Ca 94598
4  Telephone  (925) 945-4491
   Facsimile:  (925) 746-3916
5
6  Attorneys for Defendant,
   HUMANE SOCIETY SILICON VALLEY
7
8              UNITED STATES DISTRICT COURT
9
            NORTHERN DISTRICT OF CALIFORNIA
10
11                    SAN JOSE DIVISION
12  LEE JACKSON and KENNETH          Case No: C07 05667 RS
    JACKSON,
13                                   DEFENDANT HUMANE SOCIETY
14           Plaintiffs,             SILICON VALLEY'S NOTICE OF
                                     MOTION AND MOTION FOR
15       v.                          SUMMARY JUDGMENT, OR,
                                     ALTERNATIVELY FOR PARTIAL
16  SILICON VALLEY ANIMAL            SUMMARY JUDGMENT
    CONTROL AUTHORITY; CITY          DEFENDANT HUMANE SOCIETY
17  OF SANTA CLARA; CITY OF          SILICON VALLEY
18  CAMPBELL; HUMANE SOCIETY
    SILICON VALLEY and DOES          Date:  September 3, 2008
19  1 TO 20,                         Time:  9:30
                                     Place:  Courtroom 4
20           Defendants.             Judge:  Richard Seeborg
21
22
23
24
25
26
27
28

                                   1
DEFT HUMANE SOCIETY'S MOTION FOR SUMMARY JUDGMENT C07 05667 RS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ ii

NOTICE OF MOTION ................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................... 2

    I.   INTRODUCTION ................................................................................ 2

    II.  FACTS ............................................................................................. 3

        A. Notices & Post-Seizure Hearing ................................................ 5

        B. Procedural History ..................................................................... 8

    III. LEGAL ARGUMENT ..................................................................... 8

        A.  Summary of Argument ................................................................ 8

        B.   SVACA Was Statutorily Required to Seize Plaintiffs'
            Animals Pursuant to Penal Code Section 597.1(b),
            Thereby Precluding Any "Wrongful Exercise" of Dominion
            Over the Animals .......................................................................... 9

        C.   When Plaintiffs Failed to Pay Boarding Charges, They
            Were Stripped of Possessory Interest in the Animals by
            Operation of Law ......................................................................... 11

    IV.  CONCLUSION ............................................................................. 12

1

TABLE OF AUTHORITIES

2

3

## **CASES**

4

*Broden v. Marin Humane Society,*
70 Cal.App.4th 1212 (1999)..........................................9, 10, 11, 12,

*Burlesci v. Peterson,*
  68 Cal.App.4th 1062 (1998) ...................................................8, 12,

5

6

7

8

9

## **STATUTES**

10

Penal Code Section 597.1...................................................2, 9, 10, 11, 12

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Harry C. Gilbert, Esq. (SBN 129944)
     Steven R. Myers, Esq. (SBN 203694)
2    JOSEPH COSTELLA & ASSOCIATES
3    215 Lennon Lane, Suite 200,
     Walnut Creek, Ca 94598
4    Telephone (925) 945-4491
     Facsimile: (925) 746-3916
5

6    Attorneys for Defendant,
     HUMANE SOCIETY SILICON VALLEY
7

8                **UNITED STATES DISTRICT COURT**

9             **NORTHERN DISTRICT OF CALIFORNIA**

10

11                   **SAN JOSE DIVISION**

| | |
|---|---|
| 12   LEE JACKSON and KENNETH JACKSON, | Case No: C07 05667 RS |
| 13 | |
| 14          Plaintiffs, | DEFENDANT HUMANE SOCIETY SILICON VALLEY'S NOTICE OF MOTION AND |
| 15        v. | MOTION FOR SUMMARY JUDGMENT, OR, |
| 16   SILICON VALLEY ANIMAL | ALTERNATIVELY FOR PARTIAL SUMMARY JUDGMENT |
| 17   CONTROL AUTHORITY; CITY OF SANTA CLARA; CITY OF | |
| 18   CAMPBELL; HUMANE SOCIETY SILICON VALLEY and DOES | Date: September 3, 2008 Time: 9:30 a.m. |
| 19   1 TO 20, | Courtroom: 4 Judge: Richard Seeborg |
| 20          Defendants. | |
| 21 | |

22

23        PLEASE TAKE NOTICE that on September 3, 2008, at 9:30 am, or as soon

24 thereafter as the matter be heard in Courtroom 4 of the above entitled court, located at 280

25 South First Street, San Jose, California, defendant HUMANE SOCIETY SILICON

26 VALLEY (the "HUMANE SOCIETY"), will and hereby does move this Court for an

27 order granting summary judgment in favor of defendant, and against plaintiffs LEE and

KENNETH JACKSON. In the alternative, the HUMANE SOCIETY, moves for an order

28 granting partial summary judgment as to each of the following issues:

1.  The seizure of plaintiffs' animals (6 dogs and 15 cats) from plaintiffs' motorhome was lawful;

2.  Plaintiffs lost all possessory interest in the dogs and cats when they failed to pay board and care charges as required by law.

This motion for summary judgment is made on grounds that there is no genuine issue as to any material fact, and that the HUMANE SOCIETY is entitled to judgment as a matter of law in that plaintiffs' sole cause of action for conversion against the HUMANE SOCIETY fails because: 1) the seizure by co-defendant SILICON VALLEY ANIMAL CONTROL AUTHORITY of 6 dogs and 15 cats from plaintiffs' motorhome was proper, and 2) plaintiffs lost their possessory interest in the animals when plaintiffs failed to pay required board and care charges.  The alternative motion for partial summary judgment is made on the same grounds.

This motion for summary judgment, and the alternative motion for partial summary judgment, is based on this notice, California Penal Code Section 597.1, the accompanying memorandum of points and authorities, declaration of Karren L. Freedman (with testimony and exhibits from the depositions of plaintiffs LEE JACKSON and KENNETH JACKSON attached), declaration of Beth Ward, and the following declarations that co-defendant SILICON VALLEY ANIMAL CONTROL AUTHORITY has filed with its Motion for Summary Judgment, or in the Alternative Partial Summary Judgment: Al Davis, Antje Morris, and Russ Patterson (copies enclosed for the Court's convenience).  This motion, and the alternative motion for partial summary judgment, is also based on the court's records and files in this case, and upon such other evidence or argument as may be presented at the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiffs allege that the HUMANE SOCIETY converted the dogs and cats that co-defendant SILICON VALLEY ANIMAL CONTROL AUTHORITY ("SVACA") seized

from their motorhome.  The issue is straightforward:  Did the HUMANE SOCIETY

wrongfully exercise dominion over the seized animals?  Since the seizure was lawful, and

plaintiffs failed to pay required board and care charges, the answer must be no, and

therefore the HUMANE SOCIETY is entitled to judgment in its favor.

## II. FACTS

Plaintiffs LEE and KENNETH JACKSON have been married for 43 years.  Since

the year 2000 they have lived in a motorhome.[1]  The refrigerator in the motorhome does

not work and the JACKSONS do not use the shower; Mr. JACKSON sleeps on the floor in

the kitchen and his wife sleeps on the couch.[2]

While the JACKSONS do not have any children,[3] as of December 19, 2005, they

were keeping 6 dogs and 15 cats inside the motorhome, including two feral cats. LEE

JACKSON considered herself to be the owner of all of those animals.[4]  Mr. JACKSON

considered himself and his wife to be the owners of all the animals, except the two feral

cats.[5]

On Dec. 19, 2005, Officer ANTJE MORRIS of SVACA knocked on the door of

the motorhome while it was parked near Boston Market in Mervyn's Plaza in Santa Clara.[6]

Both Mr. and Mrs. JACKSON answered the door, at which point Officer MORRIS told

---

[1]  Leola Jackson deposition 10:24 - 11:5; Kenneth Jackson deposition 8:22 - 9:21.  All transcript excerpts are attached as Exhibits A and B to the accompanying declaration of Karren L. Freedman; for brevity, further transcript references will be to "Leola Jackson deposition" and "Kenneth Jackson deposition."

[2] Kenneth Jackson deposition 58:21 - 59:13, 63:18 - 64:13.

[3] Kenneth Jackson deposition 9:22-23

[4] Leola Jackson deposition 59:7 – 62:19

[5] Kenneth Jackson deposition 30:13 – 31:6.

[6]  Leola Jackson deposition 15: 14-16, 21:14 - 22:3; Kenneth Jackson deposition 18:11-20.

them she was there to check the JACKSONS' dogs.[7]

Mrs. JACKSON showed Officer MORRIS one of her dogs, Calae, who was 15 years old and had a broken jaw for "maybe only three or four or five months; just a short time."[8]  Mrs. JACKSON brought out a second dog, Minnilinn, for Officer MORRIS to see.  The dog was wearing diapers to control bleeding. Officer MORRIS described the dog as hemorrhaging and having "severe dental problems." [9]

Based on the condition of these two dogs, Officer MORRIS went inside the motorhome to check the other animals because she was concerned about their welfare. [10] Neither Mr. nor Mrs. JACKSON told Officer MORRIS that she could not enter the motorhome.[11] Officer Morris made these observations in her written report:

"I was appalled by the clutter and the strong stench of ammonia caused from urine.

There were 4 dogs tied to the couch, 1 dog tied to the bathroom cabinet and one dog to the kitchen stove.  They were tied up on leashes allowing them only about 1 foot of movement.  I only saw one bucket partially filled with water for the dog tied to the kitchen stove.  Even though the small dogs were wearing sweaters, I noticed that they were underweight once I handled them. Their coats were matted and nails over grown.

The cats were confined in 2 cat condos at the far end of the motor home. There were 6 cats inside each of the condos.  In each condo a dominate cat forced the remaining cats to cower and hide at the bottom....The litter

---

[7] Kenneth Jackson deposition 22:10 - 23:20; Leola Jackson deposition 30:19 - 32:3 (The accounts differ slightly but not materially); Report of Officer Antje Morris of the Silicon Valley Animal Control Authority, Exhibit B to the declaration of Antje Morris. (This declaration has been filed with the supporting papers for the motion for summary judgment (or in the alternative, for partial summary judgment), filed by co-defendant Silicon Valley Animal Control Authority. For the Court's convenience, a copy of this declaration and exhibits accompanies the within motion.

[8] Leola Jackson deposition 32:16 - 34:14; Kenneth Jackson deposition 23:16 – 24:6.

[9] Report of Officer Antje Morris of the Silicon Valley Animal Control Authority, p.1, Exhibit B to the declaration of Antje Morris (hereinafter "Officer Morris report").

[10] Officer Morris Report, p.1.

[11] Kenneth Jackson deposition 38:21 – 40:5; Leola Jackson deposition 36:20 – 38:22; Officer Morris report, p.1.

boxes were not properly maintained as they contained a large amount of fecal matter.

The stench of urine was overwhelming which caused me to cough and I tried to hold my breath as long as I could. Numerous flies were present, especially in the cat area. There were several empty food bowls outside the condos. The water bowls inside the condos were either empty or barely filled with water."[12]

Mr. JACKSON perceived that Officer MORRIS was only in the motorhome for "a few moments" and then other animal control officers arrived, along with Santa Clara police (but no other organizations).[13] Animal control officers from SVACA seized all 21 animals from the motorhome and then left, as did the Santa Clara police officers who had responded. Mr. and Mrs. JACKSON were allowed to stay with their motorhome.[14]

The HUMANE SOCIETY, which does not employ any animal control officers, and is not an enforcement agency, did not participate in the seizure of the animals.[15] After SVACA seized the animals from the JACKSONS' motorhome, SVACA transported the animals to the HUMANE SOCIETY, which provided needed veterinary care, as well as food and shelter.[16] The HUMANE SOCIETY operates a shelter that has an emergency animal hospital, and its motto is that the HUMANE SOCIETY is "The Best Place to Adopt a Pet." [17]

**A. Notices & Post-Seizure Hearing**

SVACA gave plaintiffs a Notice: Seizure of Animals. The Notice is dated

---

[12] Officer Morris report, pp.1-2.

[13] Kenneth Jackson deposition 40:6 – 41:14; Leola Jackson deposition 40:23 – 41:10.

[14] Kenneth Jackson deposition 70:25 - 71:10, 72:8-20.

[15] Declaration of Beth Ward.

[16] Declaration of Beth Ward, and Exhibit A thereto.

[17] Declaration of Beth Ward.

---

DEFT HUMANE SOCIETY'S MOTION FOR SUMMARY JUDGMENT C07 05667 RS

December 19, 2005 at 4:15 p.m. [18]  While Mr. JACKSON did not remember receiving the

Notice,[19] Mrs. JACKSON did.  She first testified at deposition that she did not receive the

Notice until *after* the December 22, 2005 post-seizure hearing, at the same time she

received a Declaration of Ownership or Right to Keep Animal, on which she had written

"Please make the hearing as soon as possible.  I love my animals and they love me." [20]

Mrs. JACKSON then read her handwritten comment requesting that a hearing be

held as soon as possible, and changed her testimony, saying:  "Well, then, she [Officer

Morris] gave this to me prior to the hearing."  Mrs. JACKSON wrote on the bottom of the

Declaration:  "Please notify us of date by phone.  We don't pick up our mail daily because

of gas prices." [21]

The Notice: Seizure of Animals referred to the "enclosed declaration" [Declaration

of Ownership or Right to Keep Animal] and also stated that "costs for care/treatment of

animal(s) properly seized are liens against the animal(s).  No animal will be returned until

liens are paid." [22]

Mr. JACKSON understood the purpose of the Declaration was to request a hearing,

and he signed it along with his wife on either December 19th or December 20th. [23]

SVACA held a post-seizure hearing on December 22, 2005 that the JACKSONS

attended.[24]  At the hearing, Mr. JACKSON asked a few questions, and Mrs. JACKSON

---

[18] Declaration of Antje Morris, and Exhibit B thereto (Officer Morris Report, p.2); Declaration of Albert Davis (original filed with SVACA's Motion for Summary Judgment, copy accompanies the within motion).

[19] Kenneth Jackson deposition 72:21 – 74:6, 76:10 - 77:4, and Exhibit I thereto.

[20] Leola Jackson deposition 83:1-23, and Exhibit I.

[21] Leola Jackson deposition 85:4 – 87:9.

[22] Exhibit I to the Kenneth Jackson deposition.

[23] Kenneth Jackson deposition 74:7 – 77:1.

[24] Kenneth Jackson deposition 77:5 – 78:15, and Exhibit J thereto (12/21/05 letter from Al Davis of SVACA advising that hearing was set for December 22, 2005 at 9 a.m.)

DEFT HUMANE SOCIETY'S MOTION FOR SUMMARY JUDGMENT C07 05667 RS

spoke. Campbell Police Captain Russell Patterson conducted the hearing, and told the JACKSONS at its conclusion that the seizure was proper and justified. The JACKSONS received a letter from him to that effect dated the same day as the hearing.[25]

Captain Patterson also prepared Findings in Support of Decision Affirming Seizure and Impoundment in which he concluded that the animals were being cruelly treated, the officer had reasonable grounds to believe that very prompt action was required to protect the health or safety of the animals or others, that there was a reasonable basis to believe that the animals were infected with disease that could be transmitted to humans, and that there was a reasonable basis to believe that seizure and impoundment "was necessary to protect the public health or safety...." [26]

Following the post-seizure hearing, the JACKSONS did not pay boarding charges that SVACA told them in writing must be paid. [27] On January 6, 2006, more than 14 days following the seizure, SVACA informed the HUMANE SOCIETY via e-mail that plaintiffs had failed to pay costs for care and treatment of animals, that the animals were now considered abandoned, and were released to "HS [HUMANE SOCIETY] and our care." [28]  Most of the animals were sent to rescue groups (because they were not suitable for general adoption); one dog and five cats were euthanized. [29]

---

[25] Kenneth Jackson deposition 79:7-11, 79:23 - 80:7, 81:2 - 82:11, and Exhibit K thereto; Leola Jackson deposition 91:3-9; Declaration of Russell Patterson, and Exhibit B thereto (filed with SVACA's Motion for Summary Judgment).

[26] Declaration of Russell Patterson, and Exhibit A thereto (filed with SVACA's Motion for Summary Judgment, copy accompanies the within motion).

[27] Kenneth Jackson deposition, 88:24 - 89:7, 91:3-12; 104:7-12, and Exhibit M thereto.

[28] Declaration of Beth Ward, and Exhibit B thereto.

[29] Declaration of Beth Ward. As will be explained in the Memorandum of Points and Authorities that follows, the ultimate disposition of the animals is not a material fact since plaintiffs were stripped of their possessory interests when they failed to pay SVACA's boarding charges. The HUMANE SOCIETY has included this information so that the Court has a complete picture of this case.

---

DEFT HUMANE SOCIETY'S MOTION FOR SUMMARY JUDGMENT C07 05667 RS

The JACKSONS now have "one little dog" and a "little cat," with no plans to acquire more animals. [30]

## B. Procedural History

Plaintiffs filed a complaint in Santa Clara County Superior Court on January 29, 2007, and a first amended complaint on September 28, 2007. In the ninth cause of action, plaintiffs allege that the HUMANE SOCIETY "took possession of Plaintiffs' pet animals that had been seized by the Silicon Valley Animal Control Authority and converted them to their own use."

SVACA filed a Notice of Removal in State court on November 7, 2007. A further case management conference is set in the United States District Court for the Northern District Court of California on August 13, 2008, with a trial date currently set for October 27, 2008.

## III. LEGAL ARGUMENT

## A. Summary of Argument

The HUMANE SOCIETY is named only in plaintiff's ninth cause of action for conversion, which alleges that the HUMANE SOCIETY took possession of the animals seized by SVACA and converted them.

Under California law, conversion is the "wrongful exercise of dominion over the property of another." *Burlesci v. Peterson*, 68 Cal.App.4th 1062, 1065 (1998). Plaintiffs cannot prevail on this claim on two related grounds: first, SVACA's seizure of the animals was proper, precluding any theory that the HUMANE SOCIETY'S taking possession to provide care was "wrongful;" and second, plaintiffs' failure to pay the boarding charges as required by statute stripped them of any possessory interest in the animals.

---

[30] Kenneth Jackson deposition 95:6 - 96:17.

---

DEFT HUMANE SOCIETY'S MOTION FOR SUMMARY JUDGMENT C07 05667 RS

**B. SVACA Was Statutorily Required to Seize Plaintiffs' Animals Pursuant to Penal Code Section 597.1(b), Thereby Precluding Any "Wrongful Exercise" of Dominion Over the Animals**

First, there was no wrongful exercise of dominion. On the contrary, plaintiffs maintained these dogs and cats in conditions that were clearly inhumane, as Captain Patterson found in upholding the seizure, and as Officer MORRIS' report makes abundantly clear. Common sense dictates that one does not keep 21 animals confined in a motorhome.

Mrs. JACKSON told Officer MORRIS that Calae, one of the two dogs Mrs. JACKSON showed the officer, had a broken jaw and that the dog was injured when striking its head on a table while the JACKSONS were driving their motorhome a year before the seizure (Officer Morris report). While the JACKSONS' deposition testimony was different from the admission quoted by Officer MORRIS, it is undisputed the Calae's jaw had been broken for months.

The other dog that Mrs. JACKSON showed Officer MORRIS had severe dental problems and was bleeding (regardless of the cause). It is hard to imagine a situation that did not present reasonable grounds for the officer to investigate further.

Officer MORRIS described in her report the stench of ammonia from urine, the lack of water, the litter boxes filled with fecal matter, flies, and the apparent health problems of the cats (ear mites, sneezing, discharge from their eyes and noses).

California has enacted a comprehensive statute that governs enforcement of animal cruelty laws, Penal Code Section 597.1. In *Broden v. Marin Humane Society*, 70 Cal.App.4th 1212 (1999) the California Court of Appeal described Penal Code Section 597.1 as a "self-contained regulatory scheme covering treatment of animals." *Id.*, at 1216. The Court summarized the statute, which had not been previously judicially construed:

> "It provides that the failure to provide animals with 'proper care and attention' is a misdemeanor. (Subd. (a).) It covers the authority of animal control officers over sick, injured, straying, or abandoned animals in nonemergency situations. It further provides that animals may be seized or impounded when such an officer 'has reasonable grounds to believe that very prompt action is required to protect the health or safety' of the

DEFT HUMANE SOCIETY'S MOTION FOR SUMMARY JUDGMENT C07 05667 RS

animals. (Subds. (a) & (b).)   It deals with the circumstances in which animals may be 'killed' or 'humanely destroyed.' (Subds. (b), (c), (e) & (i). Animals that were 'properly seized' are to receive 'care and treatment,' the costs of which 'shall constitute a lien on the animal' that the owner must pay before the animal is returned. (Subds. (a) & (b).) The owner of a seized or impounded animal is entitled to 'a postseizure hearing to determine the validity of the seizure or impoundment,' return of the animals, and liability for costs. (Subds. (f) & (j).)" *Id.*, at 1216-1217.

Subdivision (b), referenced above, provides that an animal control officer:

"may likewise take charge of any animal, including a dog or cat…that…is being cruelly treated, and provide care and treatment for the animal until it is deemed to be in a suitable condition to be returned to the owner."  Calif. Penal Code § 597.1(b).

Subdivision (b) continues with language that not only authorized, but *mandated*, the seizure here:

"When the officer has reasonable grounds to believe that very prompt action is required to protect the health or safety of an animal or the health or safety of others, **the officer shall immediately seize the animal** and comply with subdivision (f)."  (Emphasis added.)

In discussing "reasonable grounds" for immediate seizure, the Court of Appeal compared "reasonable grounds" to the "exigent circumstances" of search and seizure law, noting that "every case must be explained in light of what was known to the officer at the time of entry." *Broden, supra,* at 1220-1221.

In *Broden*, the animal control officer reported that she could smell a strong stench while standing in front of a reptile store; she associated that smell with something dead. Flies were on the outside of the building trying to get in, and the officer made a warrantless entry into the store. *Id.*, at 1221-1222.  The Court upheld the entry, noting that Section 597.1 "clearly contemplates that animals" receive the same consideration as cases where law enforcement officers make warrantless entries to a building when they have "reasonable grounds for believing that persons inside are in need of immediate aid." *Id.*, at 1222.  In *Broden*, the hearing officer (and the California Court of Appeal) upheld the warrantless entry as justified by exigent circumstances.

In the present case, either the JACKSONS gave permission for Officer MORRIS to enter their motorhome as Officer Morris' report states, or the officer had reasonable grounds to enter, after seeing outside the motorhome a dog with a broken jaw that had to be spoon fed, and another dog that was bleeding and had severe dental problems. Exigent circumstances were even more pronounced here than in *Broden*: in that case, the reptile store was located in a building on a San Rafael street (*Id.*, at 1221), whereas here the 6 dogs and 15 cats were kept in a motorhome, which is, after all, mobile.

Following the seizure from the JACKSONS' motorhome, SVACA complied with section 597.1, subsection (f), by providing the hearing requested by the plaintiffs. The hearing officer upheld the validity of the seizure, concluding that "very prompt action" was required to protect the health or safety of the animals or others. Thus, at every turn, SVACA acted pursuant to a statutory mandate to protect animals. SVACA's exercise of dominion—and, by extension, the HUMANE SOCIETY's—was clearly not wrongful given this statutory mandate.

### C. When Plaintiffs Failed to Pay Boarding Charges, They Were Stripped of Possessory Interest in the Animals by Operation of Law

"A recurring theme of section 597.1 is that animal owners will pay, literally, when the animal control officers have cause to take an animal into custody." *Broden, supra,* at 1224. Section 597.1 specifically makes the owner "personally liable" for the costs of the seizure and care for the animal. Calif. Penal Code § 597.1(h). If the owner fails to pay these charges "within 14 days of the seizure," the animal "shall be deemed to have been abandoned and may be disposed of by the impounding officer." *Ibid.*; *see also, Broden, supra,* at 1224-1225. The *Broden* court held that the statutory provisions "are clear and without ambiguity" and should be applied. *Id.*, at 1225.

Plaintiffs knew they had to pay boarding charges. The Notice: Seizure of Animals specifically stated that the animals would not be returned without payment of the costs of their care. The December 22, 2005 letter from SVACA stated the amount of the boarding charges. Thus, when plaintiffs did not pay the charges, the animals were deemed

---

1  abandoned by operation of law.  All possessory interest was transferred to SVACA, which

2  entrusted the animals to the HUMANE SOCIETY.

3        As in *Broden*, this deemed abandonment is decisive:  the JACKSONS cannot

4  prevail on a conversion theory because they "no longer had any possessory or ownership

5  interest in the animals that could support an award of damages." *Id.*, at 1226; *see also*

6  *Burlesci, supra*, at 1065 (conversion requires dominion over the "property of another").

## IV. CONCLUSION

8        Plaintiffs have no right to pursue a conversion claim against the HUMANE

9  SOCIETY, whose dominion over the animals was lawful and proper.  The entry of Officer

10  MORRIS into the motorhome, if not with plaintiffs' consent, was justified by the mandate

11  of California Penal Code Section 597.1 to immediately seize the animal(s) when the

12  officer has reasonable grounds to believe very prompt action is required to protect the

13  health or safety of an animal or others.

14        The fact that plaintiffs kept 21 animals in a motorhome speaks for itself.  The

15  seizure was proper and upheld by a hearing.  When plaintiffs failed to pay required

16  boarding charges, the animals were deemed abandoned per Section 591(h), allowing the

17  impounding officer (SVACA) to dispose of the animals.

18        Since there are no genuine issues as to any material facts, defendant HUMANE

19  SOCIETY SILICON VALLEY respectfully urges this Court to grant its motion for

20  summary judgment, or in the alternative its motion for partial summary judgment.

21

22  DATED: July 30, 2008                    JOSEPH COSTELLA & ASSOCIATES

23

24

25                                    By: _____

26                                        Harry C. Gilbert
                                          Attorneys for Defendant
27                                        HUMANE SOCIETY SILICON VALLEY

28